UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CUSA K-TCS, LLC.,

    Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION 631,

    Defendant.

Case No. 2:07-CV-00311-KJD-GWF

**ORDER**

Currently before the Court is Defendant International Brotherhood of Teamsters, Local Union 631's (Union) Motion for Summary Judgment (#13) filed on July 10, 2007, and Plaintiff CUSA K-TCS, LLC's (CUSA) Motion for Summary Judgment (#14) filed on July 23, 2007. Both Motions have been fully briefed and address the issue of whether the Court should vacate the Decision and Award of Arbitrator Len Rutherford in favor of Union Defendants. Because the Motions are so closely related, the Court issues its decision in regard to both Motions jointly herein.

**I. Background and History**

CUSA provides shuttle bus services between McCarran airport in Las Vegas, Nevada and area hotels. It also provides bus tours of area attractions, as well as chartered services. CUSA and the Union entered into a Collective Bargaining Agreement (CBA) with a term lasting between October 1, 2004, to September 30, 2007. On January 1, 2006, CUSA added a fifty cent ($.50) surcharge onto customers' ticket prices in order to compensate for higher fuel costs. On or about March 14, 2006, CUSA and the Union had a labor-management meeting where the issue of the fuel surcharge was raised and discussed by the parties. The Union alleges that it became aware of the surcharge issue and dispute on or about March 16, 2006. Subsequently, the Union brought the issue

before the Labor Management Committee, including the utilization of the Federal Mediation and Conciliation Service—through the auspices of the Labor Management Committee—but the issue remained unresolved between the parties.  On July 28, 2006, the Union filed a grievance alleging that CUSA violated the CBA by instituting a fuel surcharge to the ticket price charged to customers and not considering that surcharge as part of the total revenue used to calculate the proper wage for employees pursuant to the terms of CBA.  The grievance was heard by the Joint Arbitration Board on November 29, 2006, but the Board was unable to reach a majority decision.  Pursuant to the CBA, the matter was submitted to Arbitrator Len Rutherford.

The Arbitrator found *inter alia* that the grievance was timely filed, granted the grievance in favor of the Union, and ordered CUSA to pay the amounts owed to the Union's employees impacted by the grievance.

On March 12, 2007, Plaintiff CUSA filed a Complaint, seeking to vacate the arbitration award.  As stated above, both parties filed motions for summary judgment on July 10 and 11, 2007 respectively.  Plaintiff sets forth two arguments in its Motion, requesting that the Court grant summary judgment in its favor.  Specifically, Plaintiff alleges that Arbitrator Len Rutherford acted without authority when he found that the grievance was timely filed, and Plaintiff further alleges that the Arbitrator's decision exceeded his authority by providing a remedy that was not sought.  Defendant seeks summary judgment, contending that Plaintiff's Complaint cannot stand, because the Arbitrator acted within his authority, in that he did not depart from the essence of the CBA.

**II.  Standard of Law for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine

factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

**III. Analysis**

    **A. Review of an Arbitration Award**

Section 301 of the Labor Management Relations Act authorizes the district courts to enforce or vacate an arbitration award entered pursuant to a collective bargaining agreement. 29 U.S.C. § 185(a); Sheet Metal Workers Int'l Ass'n, Local Union No. 150 v. Air Sys. Eng'g, Inc., 948 F.2d 1089, 1091 (9th Cir.1990). "Because federal labor policy strongly favors resolving labor disputes through arbitration, see United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960), "[i]t is well established that review of an arbitrator's decision is *extremely* narrow." Stead

Motors v. Automotive Machinists Lodge, 886 F.2d 1200, 1208 n. 2 (9th Cir.) (en banc), cert. denied, 495 U.S. 946 (1990) (emphasis in original).  Federal Courts are not "empowered to second-guess the arbitrator's findings", see United Paperworkers Int'l v. Misco, 484 U.S. 29, 38 (1987), but are "limited to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement." Van Waters & Rogers, Inc. v. Int'l Brotherhood of teamsters, 56 F.3d 1132 (9th Cir. 1995) (quoting Desert Palace, Inc. v. Local Joint Executive Bd. of Las Vegas, 679 F.2d 789 (9th Cir. 1982).  Thus, in reviewing an arbitration decision, "[t]he courts . . . have no business weighing the merits of the grievance,"  but are to determine whether the parties agreed to arbitrate the dispute. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568 (1960).   When an arbitrator is commissioned to interpret and apply the terms of a collective bargaining agreement, his decision is only legitimate "so long as it draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).

The Supreme Court has established a foundation of strong judicial support for labor arbitration awards, stating:

> The question of interpretation of the collective bargaining agreement is a question for the arbitrator.  It was the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

United Steelworkers of America v. Enterprise Wheel & Car. Corp., 363 U.S. 593 (1960).  The Court went on to state that "[a] mere ambiguity in the opinion accompanying the award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Id. at 598.   Again, in United Paperworkers Int'l Union v. Misco Inc., 484 U.S. 29, 38 (1987), the Supreme Court reiterated the great degree of judicial deference to be given arbitration awards when it stated, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Furthermore, "judicial review of an arbitration award is

4

'limited and highly deferential; so long as an arbitrator's award 'draws its essence from the collective bargaining agreement' and represents a plausible interpretation of the contract,' the court is bound to enforce it." Line Drivers, Pickup and delivery Local 81 v. Roadway Express Inc., 152 F.3d 1098, 1099 (9th Cir. 1998) (quoting Sheetmetal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus. Inc., 84 F.3d 1186, 1190 (9th Cir. 1986); United Food & Commercial Workers Union, Local 119, AFL-CIO v. United Markets, Inc., 784 F.2d 1413, 1415 (9th Cir. 1986).

However, although an arbitrator's authority may be broad, "it is not unlimited." Mo. River Serv. Inc. v. Omaha Tribe of Nebraska, 267 F.3d 848 (8th Cir. 2001) (citing Trailmobile Trailer, LLC v. Int'l Union of Elec. Workers, 223 F.3d 744, 747 (8th Cir.)  An arbitrator may "'interpret ambiguous language, but he may not, however, 'disregard or modify unambiguous contract provisions.'" Id. (quoting Hoffmanv. Cargill Inc., 236 F.3d 458, 461 (8th Cir. 2001).

**B. Timeliness**

Plaintiff alleges that the Arbitrator altered the CBA at issue by "ignoring the unambiguous language of the CBA and finding the Union's grievance to be timely." (Pl.'s Mot. for Summ. J. at 8.) The Court disagrees.  A close review of the Arbitrator's Decision and Award demonstrates that he considered the issue of timeliness in detail, including the relevant provisions of the CBA , the testimony of witnesses in regard to their understanding of the timing to file grievances, and the complete factual scenario.

Article Twenty-One of the CBA provides, in pertinent part, that "[a] grievance may be filed no later than seven (7) working days (Monday thru Friday excluding holidays) after the Employee of the Union had or should have had knowledge of the situation."  (Pl.'s Mot. For Summ. J. Ex. 1 at 13–16.)  The CBA also states that "[t]he specific time limit stated herein shall be strictly adhered to or the party not adhering to the time limits will loose [sic] by default." Id.  The CBA goes on to state that "the grievance panel shall not have the authority to modify, amend, alter, add to or subtract from any provision of this Agreement or to consider any matter not a specifically provided for in this Agreement. (Id.)  The CBA also states that "[a] grievance shall be considered null and void if not

filed and processed by the Union or the Employee represented by the Union in accordance with the time limitations set forth above unless the parties involved agree, in writing, to extend said time limitations.  (Id.)

Article Twenty of the CBA describes the function and process of the Labor Management Committee Meetings.  Of particular pertinence to this case are sections 1 through 3, which state:

> **SECTION 1.**  The Company and the Union agree to hold Labor Management Committee Meetings monthly.  The purpose of these meetings will be to address issues that may arise during the duration of this agreement.  It is not the purpose to address Specific grievances, however the issues that cause grievances may be discussed.
> **SECTION 2.**  The Labor management Committee may from time to time call for the temporary establishment of a Continuous Improvement Committee to address issues of concern to the parties and to explore solutions for the same.
> **SECTION 3.** The Labor Management Committee may call for the establishment of an Interpretations Committee. The purpose of this committee will be to interpret this Agreement when a dispute arises as to the interpretation of a specific provision of this agreement.  Whenever possible, the Interpretations Committee will be made up of the persons that actually negotiated the Agreement.

(Pl.'s Mot. For Summ. J. Ex. 1 at 13–16.)  Plaintiff contends that the time-frame of seven days set forth in Article Twenty-One of the CBA is unambiguous and not subject to the Arbitrator's interpretation.  Plaintiff argues that the Union became aware of the fuel surcharge issue in March of 2006, but failed to file a grievance until July 2006.  Plaintiffs argue that because the Union waited more than four months to file its grievance, and because there was no evidence of a written agreement to extend the time limitation, the Union clearly violated the time provision set forth in Article Twenty-One.  (See Pl.'s Mot. for Summ. J. at 2.)  Plaintiff contends that because the language of the CBA is unambiguous, the Arbitrator's decision does not draw its essence from the CBA.  Further, Plaintiff argues that the Arbitrator altered the CBA by ignoring the unambiguous language of the CBA and finding the Union's grievance to be timely.

The Arbitrator's Decision and Award rejected Plaintiff's contention that the Union's grievance was not arbitrable due to untimeliness.  In issuing its decision, the Arbitrator stated,

6

> As to the time limitations called out in Article Twenty One of the Collective Bargaining Agreement, testimony was sufficient to believe that the parties had an agreement that neither party would hold the other to the time bars.
>
> Both parties testified that they discussed this alleged violation at labor management meetings, and proceeded to mediation through the federal Mediation and Conciliation Services. When an impasse was reached in mediation, it was referred to Arbitration, fulfilling the necessary steps in Article Twenty-One.

(Pl.'s Mot. for Summ,. J. Ex. 3 at 12–13.) The Arbitrator's analysis clearly took into account the meaning of the CBA, finding that the time limits for filing a grievance contained in Article Twenty-One began to run only after the parties had reached an impasse in regard to the fuel surcharge issue. The Arbitrator relied on evidence demonstrating that the Union had referred the fuel surcharge issue to the Labor Management Committee set forth in Article Twenty, in an attempt to resolve the matter without resorting to the CBA's grievance and arbitration process. Indeed, the evidence before the Arbitrator established that as well as bringing the fuel surcharge issue before the Labor Management Committee, the parties also utilized a mediator from the Federal Mediation and Conciliation Service. It was only when the mediation—through the auspices of the Labor Management Committee—failed to yield results, that the Union filed its grievance. (See Pl.s Mot. for Summ. J. Ex. 3 at 3, 4, 6, 7, 12 & 13.) Specifically, the Arbitrator's Decision and Award stated that Mr. Bruce Russell (a member of the Union) when asked why the Union failed to file a grievance at an earlier date, testified that "the situation was moving through the process called out in the Collective Bargaining Agreement, and that the grievance was filed only when the parties had reached impasse at the final meeting with the Federal Mediation and Conciliation Services." (See Pl.'s Mot. for Summ. J. Ex. 3 at 6.)

Here, it is clear that the Arbitrator's decision took into account the terms of the entire CBA before finding that Defendant's grievance was timely filed. The Arbitrator's decision does not disregard or modify the CBA, but incorporates the Labor Management Committee Process of Article Twenty with the time limitation found in Article Twenty-One, allowing for the Labor Management Committee Process of resolving disputes—including the use of mediation—to be exhausted before the grievance time limit began to run.

1  Here, the Court is not concerned with whether the Arbitrator's interpretation of the CBA is
2  the best interpretation, or even the most reasonable interpretation under the circumstances, but
3  instead focuses on whether the Decision and Award draws its essence from the collective bargaining
4  agreement and represents a plausible interpretation of the contract.  Here, and for the reasons listed
5  above, the Court finds that the Arbitrator's Decision is clearly based on the essence of the provisions
6  of the CBA, is a plausible and reasonable interpretation of the CBA, and that the Arbitrator acted
7  within the scope of his authority.  Therefore, the decision of the Arbitrator is upheld.

**C. Award**

Plaintiff also argues that the Arbitrator's Decision and Award should be vacated because the Arbitrator exceeded his authority by providing a remedy, when he was only asked to determine whether the CBA was violated.

The issue that was stipulated to by the parties to be submitted to be resolved by the arbitrator was as follows:

> It is concluded that the issue to be resolved is whether the Company violated the Collective Bargaining Agreement by instituting a fuel surcharge to the ticket price charged to the public for the Airport Shuttle and our bus trips, and refusing to consider this increase as the total revenue used to calculate the amount paid to the employees, per the above-referenced Appendix in the Collective Bargaining Agreement.

In its decision and Award, the Arbitrator granted the grievance, and also held that the Employer was required to schedule a time and place wherein the Union could audit its books to determine the amount owed to the employees impacted by the grievance, and that the employer was required to pay the amounts determined by the audit. (See Pl.'s Mot. for Summ. J. Ex. 3 at 14.)

The Ninth Circuit has held that "the scope of [an] arbitrator's authority is limited to the issue submitted to him by the parties." Sunshine Mining Company v. United Steelworkers of America, 823 F.2d 1289 (9th Cir. 1987) (citing Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 302 (3d Cir. 1982).  Plaintiff uses this reasoning to contend that because the issue of an award,

or back pay was not raised in the grievance, the Arbitrator exceeded his authority by issuing an award, including back pay, to those employees impacted by the grievance. The Court disagrees.

In Sheet Metal Workers, Local Union No. 359 v. Madison, 84 F.3d 1186 (9th Cir. 1996), in response to an employer's appeal that an arbitration award should be vacated because the grievance did not address the issue of back pay, the Ninth Circuit held that "it is within an arbitrator's authority to award back pay once he or she has concluded that an employer improperly laid off employees." (Citing Pack Concrete, Inc. v. Cunningham, et. al., 866 F.2d 283 (9th Cir. 1989).

Here, as in Sheet Metal Workers, Local Union No. 359, the Court finds that the Arbitrator's issuance of an award did not exceed his authority, but rises directly from his finding that Plaintiff breeched the CBA. The award clearly draws its essence from the collective bargaining agreement, and therefore, the Arbitrator did not exceed his authority.

**IV. Conclusion**

**IT IS HEREBY ORDERED THAT** Defendant's Motion for Summary Judgment (#13) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (#14) is **DENIED**.

DATED this 31st day of March 2008.

_____
Kent J. Dawson
United States District Judge